**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VANESSA ROFLOW,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | No. 2:25-cv-2838-ICD<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 8, 13, 14). For the reasons discussed below, the Commissioner's final decision is reversed, and the matter is remanded for further proceedings.

The Court reviews the Commissioner's final decision to determine whether it is based on proper legal standards and supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The record, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if conflicting evidence supports a

particular finding, the Commissioner's finding is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229–30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)–(g) and 416.920(a)–(g). The sequential evaluation proceeds as follows:

- Step 1: Determine whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled, and the claim is denied.
- Step 2: If the claimant is not engaged in substantial gainful activity, determine whether the claimant has a severe impairment; if not, the claimant is presumed not disabled, and the claim is denied.
- Step 3: If the claimant has one or more severe impairments, determine whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled, and the claim is granted.
- Step 4: If the claimant's impairment is not listed in the regulations, determine whether the impairment prevents the claimant from performing past work considering the claimant's residual functional capacity; if not, the claimant is presumed not disabled, and the claim is denied.
- Step 5: If the impairment prevents the claimant from performing past work, determine whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled, and the claim is denied.

See 20 C.F.R. §§ 404.1520(a)–(g) and 416.920(a)–(g).

To qualify for benefits, the claimant must establish an inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of not less than 12 months. See 42 U.S.C. § 423(d)(1)(A). The claimant must provide evidence of a physical or mental impairment of such severity that the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989).

The claimant bears the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden shifts to the Commissioner to show that the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d at 1340; Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 879 F.2d at 501.

**II. THE COMMISSIONER'S FINDINGS**

Plaintiff applied for Supplemental Security Income benefits under Title XVI of the Social Security Act on November 3, 2022. See CAR 173.[1] In the application, Plaintiff claims disability began on August 18, 2020. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on January 14, 2025, before an Administrative Law Judge (ALJ). CAR at 31-50. In a February 24, 2025, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): degenerative disc disease of the lumbar and cervical spine and obesity;

[1] Citations are to the Certified Administrative Record (CAR) lodged on December 8, 2025, ECF No. 7.

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform light work; the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; the claimant can never climb ladders or scaffolds;

4. The claimant has at least a high school education (20 CFR 416.964).

5. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

CAR at 19-25.

After the Appeals Council declined review on August 8, 2025, this appeal followed. CAR at 1-4.

## III. DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective statements and testimony concerning her physical pain and dysfunction; and (2) the ALJ failed to properly evaluate the medical opinions of Satish Sharma, M.D., and Kimberlee Terry, M.D. See ECF No. 8, p. 2. For the reasons discussed below, the undersigned finds no error as to the first issue but agrees with Plaintiff as to the second.

### A. Plaintiff's Subjective Statements and Testimony

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also

Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Ultimately, the clear and convincing standard "requires an ALJ to show his work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). "The standard isn't whether our court is

convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Id.

In determining residual functional capacity at Step 4, the ALJ considered Plaintiff's subjective statements and testimony. CAR 20-23. At the administrative hearing, Plaintiff testified that she cannot work because of back and neck pain and dysfunction. CAR at 36. She stated that, before her June 2024 cervical surgery, she could not shower by herself or wash her hair and spent much of her time in bed, and that she continues to experience severe pain and painful "locking up" of her arms and legs. CAR at 37. She described "excruciating" and "constant" low back pain radiating into her buttocks and legs, with numbness and tingling. CAR at 38. According to Plaintiff, she can sit in a recliner for up to two hours before needing to lie down, can sit in an office or dining chair for no more than half an hour, and can stand for about ten minutes before needing to sit for two to three hours. See id. at 40-44. Plaintiff testified that she can lift a gallon of milk and attend to her own grooming and bathing, but she does not prepare meals beyond a sandwich or microwaved food, cannot perform household chores, does not drive, and relies on her boyfriend and his mother to do "mostly everything" for her. See id. at 35-36, 41-43.

The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not "wholly consistent" with the medical evidence and other evidence of record. CAR at 22. The ALJ gave two reasons: (1) the objective medical evidence; and (2) Plaintiff's course of treatment and her response to it. CAR at 20-22.

As to the objective evidence, the ALJ acknowledged imaging showing lumbar degenerative changes with neuroforaminal narrowing and nerve root contact, as well as August 2023 EMG testing showing C7 and L4 radiculopathy. CAR at 21 (citing id. at 465, 669). The ALJ also cited findings that were normal or only mildly abnormal. A July 2022 examination revealed no abnormalities. See id. (citing id. at 437-38). In August 2022, Plaintiff had no weakness in her extremities, with limited left shoulder range of motion and slightly limited back flexion. See id. (citing id. at 440). At the March 2023 consultative examination, Plaintiff had cervical and lumbar tenderness and walked with a limp, but her straight-leg raising test was

negative, she had no muscle spasm and full strength throughout, and she did not need an assistive device. See id. (citing CAR at 458-59). In November 2023, Plaintiff walked without a limp, had full lower extremity strength, and gave poor effort on heel and toe walking. See id. at 21-22 (citing id. at 647). In March 2024, she ambulated without difficulty. See id. at 22 (citing id. at 657). And in November 2024, following her cervical surgery, Plaintiff had normal strength throughout and no issues with ambulation. See id. (citing CAR at 716).

As to treatment, the ALJ described Plaintiff's treatment during the relevant period as "generally conservative treatment . . . consisting of medication," and noted Plaintiff's November 2023 report to her provider that her functioning had improved. Id. at 22 (citing id. at 661).

Plaintiff argues that the ALJ merely summarized the medical evidence without explaining how the cited findings, many of which Plaintiff says corroborate her allegations, undermine any specific portion of her testimony. See ECF No. 8, pp. 5-6 (citing Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014)). She also argues that a lack of objective support cannot alone justify discounting her testimony, and that the ALJ's only other reason, conservative treatment, is unsupported because her treatment included narcotic pain medication, epidural steroid injections, and multiple spinal surgeries. See id. at 6-8 (citing Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir. 2017); Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th Cir. 2014); Lapierre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010)). In her reply brief, Plaintiff adds that the July 2022 examination cited by the ALJ was brief and unrelated to her spinal impairments, and that the "medications" she continued at that time consisted of Norco 10 mg, up to 60 tablets per month. See ECF No. 14, pp. 1-2.

The Commissioner responds that the ALJ properly considered the objective evidence as one factor among others and permissibly relied on Plaintiff's relatively conservative treatment during the relevant period and her improvement with that treatment. See ECF No. 13, pp. 4-6 (citing Smartt, 53 F.4th at 500).

The Court agrees with the Commissioner. Evidence that treatment has effectively controlled a claimant's symptoms is a proper basis for discounting the claimant's allegations of disabling symptoms. See 20 C.F.R. § 416.929(c)(3)(iv)-(v); Warre v. Comm'r of Soc. Sec.

Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); see also Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017) (evidence that treatment successfully relieved symptoms can undermine a claim of disability); Smartt, 53 F.4th at 500. Here, the ALJ relied on Plaintiff's own November 2023 report to her provider that she could "walk much longer, shop, perform activities of daily living and although she has pain, it is not bad enough that it limits her from doing most things that she would like." CAR 22, 661. That report cannot be squared with Plaintiff's testimony that she can stand for only ten minutes before needing to sit for two to three hours, cannot perform household chores, and relies on others to do "mostly everything" for her. See id. at 36, 40-42, 44. The ALJ also noted that, after Plaintiff's cervical surgery, a November 2024 examination showed normal strength throughout and no issues with ambulation. See id. at 22, 716. Plaintiff's reply takes issue with the July 2022 examination, but it does not address either the November 2023 report or the November 2024 findings. See ECF No. 14.

Plaintiff's remaining arguments are unpersuasive. Because the ALJ did not rely on the objective evidence alone, the rule that a lack of objective support cannot be the sole basis for discounting a claimant's testimony does not apply. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Nor did the ALJ merely summarize the record. The ALJ tied specific findings, such as normal gait without an assistive device, full lower extremity strength, and normal post-surgical examination findings, to Plaintiff's claimed inability to stand, walk, and care for herself. See CAR 21-22. The ALJ's rationale thus has "the power to convince." Smartt, 53 F.4th at 499. Plaintiff points to other evidence which she contends supports her testimony, but where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. See Burch, 400 F.3d at 679.

Finally, the Court shares Plaintiff's doubts about the ALJ's description of her treatment as "generally conservative." Plaintiff took Norco on an ongoing basis, received epidural steroid

injections, and underwent cervical surgery in June 2024. See CAR 37, 437, 622, 637, 765, 777. The Ninth Circuit has questioned whether such treatment may fairly be called conservative. See Revels, 874 F.3d at 667; Garrison, 759 F.3d at 1015 n.20. Courts in this district have reached differing conclusions on the point. Compare Gallo v. Kijakazi, No. 1:22-cv-00152-GSA (E.D. Cal. Mar. 22, 2023) (ALJ's reliance on "conservative" treatment "not compelling" where claimant received epidural steroid injections and opioid pain medication, but that reasoning "was not necessary to sustain the decision"), with Olea v. Comm'r of Soc. Sec., No. 1:21-cv-00876-SAB (E.D. Cal. Feb. 2, 2023) (prescription of narcotic medication and injections did not negate the reasonableness of ALJ's finding that treatment as a whole was conservative). The Court need not resolve the question here. Even assuming the ALJ erred in this respect, however, the error is harmless because the ALJ's reliance on Plaintiff's improvement with treatment remains valid and is supported by substantial evidence. See Carmickle, 533 F.3d at 1162.

**B. Evaluation of Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c. These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source. See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]"). Thus, ALJs are no longer required to "defer to or give any

specific evidentiary weight to" treating physicians over medical opinions from other sources. See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness." See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal. May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)). Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be." See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)). "For consistency, the regulations state: '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)). "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

The Ninth Circuit has since confirmed that the revised regulations displace its former requirement that an ALJ provide "specific and legitimate reasons" for rejecting an examining doctor's opinion. See Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022). Even so, "an ALJ

cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." Id.

At Step 4, the ALJ evaluated medical opinions from the following sources: (1) Satish Sharma, M.D., who performed a consultative internal medicine examination on March 16, 2023; (2) Kimberlee Terry, M.D., a state agency medical consultant at the initial level; and (3) Dr. Simpkins, a state agency medical consultant at the reconsideration level. See CAR 23. The findings of Drs. Terry and Simpkins are prior administrative medical findings, see 20 C.F.R. § 416.913(a)(5), which the ALJ evaluates under the same persuasiveness factors as medical opinions, see id. § 416.920c(a), (c). For ease of reference, the Court refers to all three as opinions.

Dr. Sharma's examination revealed, among other things, tenderness to palpation over both shoulders, pain on abduction of the left shoulder at 110 degrees and the right at 130 degrees, cervical and lumbar tenderness with pain on flexion, and a left-sided limp. See id. at 458-59. Dr. Sharma opined that Plaintiff could perform light work with occasional postural activities and no more than occasional overhead reaching with both arms. See id. at 460. Dr. Terry, noting Plaintiff's history of lumbar and cervical discectomies, decreased range of motion in both shoulders, and cervical degenerative changes with neural foraminal and central canal stenosis, likewise limited Plaintiff to light work with occasional postural activities and occasional overhead reaching with both arms. See id. at 61-63. On reconsideration, Dr. Simpkins limited Plaintiff to light work and assessed no manipulative limitations. See id. at 73-74.

The ALJ found the opinions of Drs. Sharma and Terry persuasive to the extent they limited Plaintiff to light work. See id. at 23. The ALJ rejected, however, their limitation to occasional overhead reaching, as well as their limitation to occasional, rather than no, climbing of ladders, ropes, and scaffolds. See id. As to the reaching limitation, the ALJ found it at least partially supported by Dr. Sharma's objective findings, but concluded that it was inconsistent with Dr. Simpkins's opinion and with the record, which the ALJ stated "does not show a twelve-month period where there was a severe impairment meriting such limitation." Id. The ALJ instead found Dr. Simpkins's findings more persuasive. See id.

Plaintiff argues that the ALJ mischaracterized the record, which she says shows severe neck pain radiating to her shoulders and upper extremities from at least January 2022 through April 2024, well over twelve months. See ECF No. 8, pp. 9-10. Plaintiff further argues that the error is harmful because the hypothetical questions posed to the vocational expert did not include a restriction to occasional overhead reaching. See id. at 11 (citing Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012)). The Commissioner contends that the ALJ addressed both supportability and consistency, as required; that the reaching limitation is inconsistent with Dr. Simpkins's opinion and with treatment notes showing that any worsening of Plaintiff's cervical impairment did not last twelve months; and that any error is harmless because Plaintiff could still perform the cashier job identified by the ALJ. See ECF No. 13, pp. 6-9 (citing, inter alia, Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016)). In reply, Plaintiff stands on the arguments in her opening brief. See ECF No. 14, p. 4.

The Court agrees with Plaintiff. The ALJ found the reaching limitation at least partially supported by Dr. Sharma's examination findings of bilateral shoulder tenderness and painful abduction, so the supportability factor favored the limitation. See CAR 23, 458. The ALJ's rejection of the limitation therefore turned on consistency and, in particular, on the ALJ's finding that the record does not show a twelve-month period during which Plaintiff's impairment warranted such a limitation. See id. at 23. To be sure, temporary limitations do not satisfy the twelve-month durational requirement, and an ALJ may decline to adopt a limitation which was only temporary. See Carmickle, 533 F.3d at 1165; 20 C.F.R. § 416.909. Here, however, the ALJ's finding that the record shows no twelve-month period warranting the limitation is not supported by substantial evidence. As Plaintiff notes, the record reflects cervical and upper extremity findings over a period well over twelve months, including:

- limited left shoulder range of motion in August 2022, CAR at 440;
- limited cervical range of motion and restricted motion when lifting the arm above 90 degrees in October 2022, CAR at 444;
- bilateral shoulder tenderness and painful abduction at the March 2023 consultative examination, CAR at 456-58;

- an April 2023 emergency room visit for neck pain with intermittent numbness and tingling of the left upper extremity, CAR at 576, 588;
- EMG testing in August 2023 showing C7 radiculopathy, CAR at 465;
- a November 2023 report of difficulty holding up her head because of neck pain, CAR at 625;
- cervical tenderness, radiating pain, limited cervical range of motion, and pain aggravated by lifting and raising the left arm in February and March 2024, CAR at 474, 478, 641; and
- an April 2024 cervical epidural steroid injection which provided "absolutely no relief," CAR at 622, 637, followed by cervical surgery in June 2024, CAR at 37, 777.

The ALJ did not explain why this evidence fails to show a twelve-month period during which a reaching limitation was warranted.

The Commissioner's arguments do not cure this deficiency. First, an ALJ may consider that one medical opinion conflicts with another, but Dr. Simpkins's contrary opinion does not relieve the ALJ of the obligation to explain, with reference to substantial evidence, why the opinions of Drs. Sharma and Terry are inconsistent with the record. See Woods, 32 F.4th at 792. Moreover, the opinion evidence on this point was not one-sided: two of the three sources, including the only examining source, assessed the same reaching limitation. Second, the treatment notes on which the Commissioner relies do not fill the gap. Plaintiff's November 2023 report concerns her ability to walk, shop, and perform daily activities; it says nothing about her ability to reach overhead. See CAR 661. The November 2024 examination post-dates Plaintiff's cervical surgery. At most, it suggests that Plaintiff's upper extremity symptoms improved after surgery. CAR at 716. Indeed, the Commissioner acknowledges that Plaintiff "may have had some worsening of her cervical impairment at some point during the relevant time period." ECF No. 13, p. 9.

The ALJ's durational rationale is also difficult to reconcile with the ALJ's own Step 2 finding. The ALJ found Plaintiff's degenerative disc disease of the cervical spine to be a severe impairment, see CAR 19, which necessarily means that the impairment met the twelve-month durational requirement, see 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). The ALJ did not explain

how that impairment could satisfy the durational requirement while no limitation resulting from it did.

Plaintiff, as the party challenging the agency's decision, bears the burden of showing that the error was harmful. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing Shinseki v. Sanders, 556 U.S. 396, 409 (2009)). An error is harmless only where it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Molina, 674 F.3d at 1115. This error was not inconsequential.

The Commissioner argues that, under Gutierrez, the Court may conclude as a matter of common sense that a cashier need not reach overhead more than occasionally. See ECF No. 13, p. 9. In Gutierrez, the vocational expert testified that a claimant who could not reach above shoulder level with her right arm could work as a cashier, and the question was whether the ALJ had to ask the expert to reconcile that testimony with the Dictionary of Occupational Titles, which describes the job as requiring frequent reaching. See 844 F.3d at 807-08. The Ninth Circuit held that no further inquiry was required because, as a matter of common experience, a cashier is unlikely to need to reach overhead. See id. Gutierrez thus used common sense to evaluate vocational testimony which addressed the limitation at issue and the Ninth Circuit has since made clear that common experience has limits as a substitute for vocational evidence. See Lamear v. Berryhill, 865 F.3d 1201, 1205-06 (9th Cir. 2017) (declining to conclude, "based on common experience," that a claimant with handling and fingering limitations could perform the jobs identified, including parking lot cashier, absent clarifying vocational testimony). Here, the hypothetical questions posed to the vocational expert did not include any overhead reaching limitation, see CAR 46-47, so there is no vocational testimony addressing whether a person limited to occasional overhead reaching with both arms could perform the cashier job or any of the other jobs the ALJ identified. Where a hypothetical question does not reflect all the claimant's limitations, the vocational expert's testimony "has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Hill, 698 F.3d at 1162

(quoting Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993)). See also Terrell W. v. Saul, No. 19-cv-07274-JSC (N.D. Cal. Feb. 9, 2021) (rejecting Commissioner's Gutierrez-based harmlessness argument where the hypothetical posed to the vocational expert omitted the overhead reaching limitation). By identifying that gap, Plaintiff has shown that the error was not inconsequential to the ALJ's non-disability determination.

**IV. REMEDY**

Plaintiff's opening brief asks that the matter be remanded for further proceedings. See ECF No. 8, p. 11. In reply, Plaintiff asks for the first time, in the alternative, for a remand for an immediate award of benefits. See ECF No. 14, p. 4. The Commissioner agrees that, should the Court find error, a remand for further proceedings is the appropriate remedy. See ECF No. 13, p. 10. The Court need not consider arguments raised for the first time in a reply brief. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). In any event, a remand for benefits is not warranted.

Where there is harmful error, a remand for further proceedings is the proper remedy except in rare circumstances. See Treichler, 775 F.3d at 1099-1102. A three-part test guides this Court's discretion in determining whether to remand for benefits. See Garrison, 759 F.3d at 1020; see also Leon v. Berryhill, 880 F.3d 1041, 1045 (9th Cir. 2017). This test is met where: (i) the record is fully developed, and further administrative proceedings would serve no useful purpose; (ii) the ALJ has failed to provide legally sufficient reasons for rejecting Plaintiff's evidence; and (iii) crediting the evidence as true, the ALJ would be required to find Plaintiff disabled upon remand. See Garrison, 759 F.3d at 1020. Even where all three conditions are satisfied, the Court must "remand for further proceedings when . . . an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Id. at 1021.

Here, the second condition is met because the ALJ failed to provide legally sufficient reasons for rejecting the reaching limitation assessed by Drs. Sharma and Terry. The first condition is not. Whether a limitation to occasional overhead reaching would preclude the cashier, cleaner-housekeeper, and sales attendant jobs the ALJ identified, or other work existing in significant numbers, is a vocational question the current record does not answer. Moreover, as

discussed above, the ALJ properly discounted Plaintiff's subjective statements and testimony, and Plaintiff's own reports of improvement with treatment raise serious doubt as to whether she is, in fact, disabled. Because outstanding issues remain to be resolved at the agency level, a remand for further proceedings is the appropriate remedy.

**V. CONCLUSION**

Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment, ECF No. 8, is GRANTED insofar as Plaintiff seeks a remand for further proceedings and DENIED insofar as Plaintiff seeks a remand for an award of benefits;
2. Defendant's Cross-Motion for Summary Judgment, ECF No. 13, is DENIED.
3. The final decision of the Commissioner of Social Security is REVERSED and this matter is REMANDED to the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) for further administrative proceedings before the Administrative Law Judge (ALJ) consistent with this Memorandum Opinion and Order.
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: October 15, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE